**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

TAMIKA R. MONTGOMERY-REEVES
VICE CHANCELLOR

Leonard Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: October 4, 2018
Date Decided: October 26, 2018

Marc S. Casarino, Esquire
White and Williams LLP
600 North King Street, Suite 800
Wilmington, DE 19801

David E. Moore, Esquire
Jonathan A. Choa, Esquire
Alan R. Silverstein, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza
Wilmington, DE 19899

RE:    ***Lexington Services Ltd. v. U.S. Patent No. 8019807 Delegate, LLC, and Florian Karrer***, Civil Action No. 2018-0157-TMR

Dear Counsel:

This letter opinion resolves Defendants Florian Karrer and U.S. Patent No. 8019807 Delegate, LLC's Motion to Dismiss the Verified Complaint of Plaintiff Lexington Services Ltd. For the reasons that follow, I stay this action.

## I.    BACKGROUND

All facts are drawn from the Verified Complaint (the "Complaint") and the documents incorporated therein. At this stage of the proceedings, I must take all of Plaintiff's well-pled facts as true and draw all reasonable inferences in its favor.

Plaintiff Lexington Services Ltd. ("Lexington") is a Maltese company under the control of the Flannery family, including James Flannery.[1] Lexington and non-party Mortimer J. Walters are in the midst of a dispute over control of U.S. Patent 8,019,807 (the "Patent"). The Patent is "directed to methods and systems for integrating heterogeneous computer systems' components into a service broker system, which simplifies application connections between different types of application programs and interfaces within the application programs, typically enterprise level or wider."[2] Walters, who owned 20% of the company holding the Patent, and Flannery, who with his family invested in the same company, set out to monetize the patent, but they ended up in a court dispute in Ireland (the "Irish Litigation").[3] The Irish Litigation settled, resulting in (1) the Irish Settlement Agreement (the "Settlement Agreement"), which laid out the general terms of the settlement; (2) the Patent Security Agreement (the "Security Agreement"), which specifically defined the obligations of the parties; (3) Lexington taking title to the Patent; (4) Walters (through his company Anthology SA) taking a security interest in the Patent; and (5) Lexington paying a sum of money to Walters.[4] The Settlement

---

[1] Compl. 2-3.

[2] *Id.* at 4 (citing Ex. A, at 1:15-20).

[3] *Id.* at 4-5.

[4] *Id.* at 5.

Agreement gives Walters—or his nominee, as the security interest was assignable—"power to appoint a receiver or equivalent with a power of sale" if Lexington defaults.[5] The Settlement Agreement also requires Lexington to (1) provide annual accounting reports to Walters regarding its efforts to monetize the Patent and (2) not become insolvent.[6]

Walters alleges that Lexington defaulted on its obligations under the Settlement Agreement by failing to provide reports and becoming insolvent.[7] On that basis, on March 8, 2017, Walters and U.S. Patent No. 8019807 Delegate, LLC ("Delegate") executed a Patent Assignment Agreement (the "PAA").[8] The PAA purports to transfer ownership of the Patent from Lexington to Defendant Delegate, which was organized to receive the Patent.[9] Defendant Karrer signed the PAA on behalf of Defendant Delegate.[10] Walters signed the PAA on behalf of Lexington.[11] This dispute centers on the validity of Walters' signature and whether this was a

---

[5] Walters Aff. Ex. 1 ¶ 6.a.

[6] Defs.' Opening Br. 5-6.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

fraudulent transaction. Both issues depend on Walters' authority under the Security Agreement.

## II. THE LITIGATIONS

On April 19, 2017, Lexington filed a Corrective Declaration for Recordation of Corrective Notice of Assignment ("Corrective Recordation") with the United States Patent and Trademark Office ("USPTO"), disputing transfer of title.[12] The USPTO recorded the Corrective Recordation but informed Lexington that it could not prevent future assignments.[13]

Litigation soon commenced. On May 17, 2017, Lexington filed suit in the United States District Court for the Eastern District of Virginia, arguing that Walters signed the PAA fraudulently.[14] That court granted Walters, Delegate, and Karrer's motion to dismiss for lack of subject matter jurisdiction on August 30, 2017.[15]

Lexington next challenged the PAA in Virginia state court. On September 5, 2017, Lexington filed a complaint against Walters, Delegate, and Karrer in the

---

[12] *Id.* at 9.

[13] *Id.* at 9-10.

[14] Pl.'s Opp. Ex. B.

[15] *Id.* Ex. C (*Lexington Servs., Ltd. v. Walters*, 2017 WL 5158680, at *5 (E.D. Va. Aug. 30, 2017)).

Virginia Circuit Court for the City of Alexandria.[16]  On November 2, 2017, the Virginia state court dismissed the matter for lack of personal jurisdiction.[17]

Meanwhile, non-parties Walters and Brian Connell attempted to proceed with a lawsuit in Ireland.  On September 20, 2017, Walters and Connell filed suit in Ireland seeking an injunction to bar Flannery and Lexington from pursuing the Virginia state case.[18]  On October 11, 2017, the Irish court denied the request for injunctive relief;[19] that case remains open but has not proceeded further.[20]

On January 10, 2018, Walters and Campbell filed the most recent litigation in Ireland.[21]  In that suit, Walters seeks "a declaration that the [Settlement Agreement] and the [Security Agreement] entitle him and Delegate to take possession of the [Patent]."[22]

---

[16]     *Id.* Ex. D.

[17]     *Id.* Ex. E (*Lexington Servs., Ltd. v. Walters*, No. CL17003336 (Va. Cir. Ct., City of Alexandria, Nov. 2, 2017)).

[18]     Pl.'s Opp. 19.

[19]     *Id.*

[20]     Defs.' Reply Br. 14 n.6.

[21]     Defs.' Opening Br. 9.

[22]     *Id.*

On March 8, 2018, Lexington filed the lawsuit currently pending before me.[23] First, Lexington asserts that Karrer and Delegate fraudulently transferred the ownership of the Patent from Lexington to Delegate because non-party Walters was not authorized to sign on behalf of Lexington. Second, Lexington contends that Karrer and Delegate's actions put a cloud on the title of the patent, causing Lexington to lose licensing revenue. Third, Lexington avers that Delegate and Karrer unlawfully attempted to take title, and this interfered with Lexington's future business prospects. Lexington seeks monetary, injunctive, and declaratory relief.

## III. ANALYSIS

In this case, the parties chose foreign law—here, Irish law—and the forum-selection clause should be interpreted in accordance with the law chosen.[24] None of the relevant conduct occurred in Delaware. The parties, however, make only passing references to Irish law. Defendants Delegate and Karrer ("Defendants") note that

> [t]o the extent the Court determines that the forum selection clause is to be interpreted according to Irish law, forum selection clauses are presumed exclusive under Irish law. As Irish law affords at least as much deference to the contracting parties as does Delaware law,

---

[23] Compl. 10-22.

[24] *Ashall Homes Ltd. v. ROK Entm't Gp.*, 992 A.2d 1239, 1245 (Del. Ch. Apr. 23, 2010) (citation omitted).

6

interpretation thereunder compels the same result as does interpretation under Delaware law.[25]

One assurance that forum-selection clauses are enforced under Irish law is not enough for me to rule on what Irish law requires. Here, as in *Ashall Homes Ltd. v. ROK Entertainment Group*, the Court does not have the knowledge of Irish law or the access to Irish sources necessary to decide a question of Irish law.[26] Thus, out of respect to the Irish courts, and because the parties have not cited Irish law to an appreciable extent, this analysis proceeds exclusively under Delaware law.[27]

Delaware law favors the enforcement of forum-selection clauses. "Forum selection [ ] clauses are 'presumptively valid' and should be 'specifically' enforced unless the resisting party '[ ] clearly show[s] that enforcement would be

---

[25]    Def.'s Opening Br. 11 n.3 (citing *Lanier v. Syncreon Hldgs., Ltd.*, 2012 WL 3475680, at *6 (E.D. Mich. Aug. 14, 2012)).

[26]    992 A.2d 1239, 1245-46 (Del. Ch. 2010).

[27]    *Id.* (citations omitted) ("When a contract contains a forum selection clause, this court will interpret the forum selection clause in accordance with the law chosen to govern the contract. Here, the agreements clearly chose English law to govern the parties' relationship, and it appears that most of the relevant conduct occurred in England, and that none of the conduct on which the Ashall Plaintiffs' claims turn occurred in Delaware. It is telling, however, that neither party has cited to English law—the law for which they bargained—in its briefing on this motion to any material degree. That illustrates a basic problem with adjudicating this dispute in Delaware: this court does not have—and cannot pretend to have—the same knowledge of English law or even access to English sources as the courts of England. In deference to the English courts, for which this court has great respect, and because the parties have not cited English law to an appreciable extent, the analysis will proceed exclusively under Delaware law.").

7

unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'"[28] The Delaware Supreme Court affirmed that holding in *National Industrial Group (Holding) v. Carlyle Investment Management*, ruling that "[a] valid forum selection clause *must* be enforced."[29] "The courts of Delaware defer to forum selection clauses and routinely 'give effect to the terms of private agreements to resolve disputes in a designated judicial forum out of respect for the parties' contractual designation.'"[30] This Court typically will grant a motion to dismiss under Court of Chancery Rule 12(b)(3) based upon a forum-selection clause "where the parties 'use express language clearly indicating that the forum selection clause

---

[28]    *Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146 (Del. 2010) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) (some citations omitted); *see also id.* at 1146 n.9 (citing *Capital Grp. Cos. v. Armour*, 2004 WL 2521295, at *3 (Del. Ch. Nov. 3, 2004); *M/S Bremen*, 407 U.S. at 15 ("A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."); *HealthTrio, Inc. v. Margules*, 2007 WL 544156, at *3 (Del. Super. Jan. 16, 2007) ("Mere inconvenience or additional expense is not the test of unreasonableness. In light of present day commercial realities, a forum clause should control absent a strong showing that it should be set aside."); *Elia Corp. v. Howard Corp.*, 391 A.2d 214, 216 (Del. Super. 1978) ("Such an agreement is unreasonable only when its enforcement would, under the circumstances then existing, seriously impair the plaintiff's ability to pursue his cause of action."); *Cent. Contr. Co. v. Md. Cas. Co.*, 367 F.2d 341, 345 (3d Cir. 1966) ("[I]t should be respected as the responsible expression of the intention of the parties so long as there is no proof that its provisions will put one of the parties to an unreasonable disadvantage and thereby subvert the interests of justice.")).

[29]    67 A.3d 373, 381 (Del. 2013) (emphasis added) (citation omitted).

[30]    *Ashall*, 992 A.2d at 1245 (citing *Troy Corp. v. Schoon*, 2007 WL 949441, at *2 (Del. Ch. Mar. 26, 2007)).

excludes all other courts before which those parties could otherwise properly bring an action.'"[31]

## A. Walters' Authority Under the Security Agreement is a Threshold Question

Plaintiff's entire case hinges on the notion that Walters did not have the authority to transfer the Patent from Lexington to another entity. Plaintiff claims that non-party Walters and Defendant Karrer committed fraud, equitable fraud, fraudulent conveyance, conspiracy to defraud, tortious interference with prospective business prospects, and conversion when they conveyed title to the Patent. Plaintiff also seeks to quiet title and a declaratory judgment. Defendants respond that Walters had authority under the Security Agreement to transfer title from Lexington to Delegate; thus, Plaintiff's claims fail.

Security Agreement Clause 11, entitled Powers of Receiver, lays out the powers that any receiver or delegate appointed by Walters or his assignee will have.[32] These include the power to "take immediate possession of" the Patent, to "sell, realise, or otherwise dispose of property and enter into, abandon, perform,

---

[31] *Id.* (citing *Eisenbud v. Omnitech Corp. Sols., Inc.*, 1996 WL 162245, at *1 (Del. Ch. Mar. 21, 1996)).

[32] Walters Aff. Ex. 2 § 11.

9

repudiate, rescind, vary or cancel any contracts," and to "sell or assign . . . [the Patent] on any terms and conditions as he thinks fit."[33]

Security Agreement Clause 14, entitled Power of Attorney, sets out more powers that any receiver or delegate will have.[34] This includes the power to

> be the attorney of [Lexington] and, in its name, on its behalf and as its act and deed, to execute any documents and do any acts and things that pursuant to the Settlement Agreement: (a) [Lexington] is required to execute and do under this agreement; or (b) any attorney so appointed deems proper or desirable in exercising any of the rights, powers, authorities and discretions conferred by this agreement or by law on [Walters], any Receiver or any Delegate. [Lexington] ratifies and confirms, and agrees to ratify and confirm, anything that any of its attorneys may do in the proper and lawful exercise, or purported exercise, of all or any of the rights, powers, authorities and discretions referred to in clause 14.1.[35]

Interpretation of the Security Agreement—particularly whether Lexington was in default on its Security Agreement obligations and whether Walters properly exercised his authority under the Security Agreement—is at the core of this dispute, and that interpretation must be decided before I can rule on any of Plaintiff's claims.

---

[33] *Id.*

[34] *Id.* § 14 (heading omitted).

[35] *Id.*

10

### B. The Settlement Agreement and the Security Agreement Contain Exclusive Forum-Selection Clauses

The Settlement Agreement states that any dispute "arising out of or in connection with [this agreement] or its subject matter or formation" must be brought in Ireland.[36] The Settlement Agreement adds that "[t]his Agreement may be pleaded as a full and complete bar to any proceedings, or other legal action commenced or brought in any jurisdiction in breach of, or contrary to, the terms of the Agreement."[37]

Paragraph 21.2 of the Security Agreement reads

> (a)    Each party irrevocably agrees that, subject to the exception set out in (b) below, the courts of Ireland shall have exclusive jurisdiction over any dispute or claim arising out of or in connection with this agreement or its subject matter or formation (including non-contractual disputes or claims) and, for such purposes, irrevocably submits to the exclusive jurisdiction of such courts. Any proceedings, suit or action arising out of [or] in connection with this agreement shall therefore be brought in the Courts of Ireland.
>
> (b)    The parties agree that any dispute arising in relation to the USPTO Registration and/or any licence granted by [Lexington] pursuant to Clause 7.1 . . . shall be subject to the jurisdiction of U.S. District Court for the Eastern District of Virginia applying U.S. Federal law and any dispute arising out of the Maltese Registration shall be governed by the laws of the Republic of Malta.[38]

---

[36]    Walters Aff. Ex. 1 ¶ 20.

[37]    *Id.* ¶ 19.

[38]    *Id.* Ex. 2 ¶ 21.2.

The USPTO Registration means

> the registration of this agreement as a grant of a first fixed charge Security by [Lexington] to [Walters or his assignee] in the Patent in the US Patent and Trade Mark Office upon the execution of this Patent Security Agreement recording the interests of [Lexington] in the Patent as set out in this document in accordance with the Confirmatory Security Agreement attached at Schedule 2.[39]

Security Agreement Clause 7.1 reads, in relevant part, "[Lexington] shall not at any time, except with the prior written consent of [Anthology SA]: … sell, assign, transfer, part with possession of or otherwise dispose of in any manner (or purport to do so) all or any part of, or any interest in, the [Patent]."[40]

## C. The Forum-Selection Clause Requires the Threshold Question Be Litigated in Ireland

Under Paragraph 21.2(a) of the Security Agreement, the courts of Ireland have exclusive jurisdiction over cases "arising out of or in connection with this agreement." Plaintiff argues that Paragraph 21.2 does not apply because this case arises out of the PAA.[41] Plaintiff's argument fails. Regardless of the validity of the PAA—which Plaintiff contests—the dispute arises out of Walters' authority or lack

---

[39] *Id.* ¶ 1.1.

[40] *Id.* ¶ 7.1(b).

[41] Pl.'s Opp. 7-12.

of authority under the Security Agreement to dispose of the patent by assigning it to Delegate.

Security Agreement Paragraph 21.2(b) provides an exception to Paragraph 21.2(a)'s selection of Ireland. Plaintiff reads Paragraph 21.2(b) to provide two situations where a case must proceed in the United States District Court for the Eastern District of Virginia: first, "any dispute arising in relation to the USPTO Registration" and second "any licence granted by the Debtor pursuant to Clause 7.1." Even applying Plaintiff's reading, the exceptions do not apply here. This dispute does not arise in relation to the USPTO Registration as defined by the Security Agreement because that is a narrow technical provision relating to the recording of interests. This dispute also does not arise in relation to a license granted by Lexington, pursuant to Clause 7.1 or otherwise, because the PAA is not a license either by name or by nature—it is an assignment, as Plaintiff says many times in its papers.[42]

Because Paragraph 21.2(a) applies to this case, and because the exception in Paragraph 21.2(b) does not apply to this case, the forum-selection clause requires the courts of Ireland first address the threshold question of Walters' authority to transfer the Patent.

---

[42] *See, e.g.*, *id.* at 13 ("[T]he PAA falls under Section 7.1 of the Security Agreement regarding any disagreement over assignment" of the Patent.).

### D. Defendants May Invoke the Forum-Selection Clauses of the Settlement Agreement and the Security Agreement

Plaintiff claims that Defendants may not invoke the forum-selection clauses of the Settlement Agreement and Security Agreement because Defendants are not signatories. Delaware law, however, allows non-signatories to invoke these provisions in cases where they are "closely related to one of the signatories such that the non-party's enforcement of the clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound."[43] In *Ashall*, then-Vice Chancellor, now-Chief Justice, Strine allowed officers and directors of the entity with the forum-selection clause to invoke its benefits because they were closely involved in the creation of the entity and because they were being sued as a result of acts that directly implicated the negotiation of the agreement that led to the entity's creation.[44]

Here, as in *Ashall*, the Defendants are closely related to one of the signatories by virtue of Defendants' positions as officers and foreseeable by virtue of their relationship to the Security Agreement. Defendants are also being sued because of acts they took in regards to the Security Agreement. Defendant Delegate is an entity created to receive the Patent, and the ownership of the Patent—including its possible

---

[43] *Ashall*, 992 A.2d at 1249.

[44] *Id.*

14

eventual assignment to a different entity such as Delegate in case of Plaintiff Lexington's default—is foreseen by the Security Agreement. The Security Agreement explicitly allows Walters, who is a signatory, to assign his security interest to a third party.[45] Thus, Delegate or a party standing in Delegate's shoes is foreseeable. Defendant Karrer is being sued for his actions as a manager of Delegate. In the event of the foreseeable transfer to an entity, someone must carry out the role Karrer did. His actions were foreseeable, and he is closely related to the agreement. For those reasons, Delegate and Karrer may invoke the Settlement Agreement's and the Security Agreement's forum-selection clauses.

### E. A Decision in the Irish Court Would Not Necessarily Decide All Potential Delaware Claims

In deciding between a dismissal or a stay, it is important to understand the effects that a decision in Irish court would have on the claims in this Court.

Walters has asked the Irish court to decide "whether the PAA is a valid exercise of Mr. Walters's authority under the [Security Agreement] and the [Settlement Agreement]."[46]

If the Irish court finds that Mr. Walters acted properly under the terms of the Security Agreement and the Settlement Agreement, then the PAA is valid. All of

---

[45] Walters Aff. Ex. 2, at 19.

[46] Defs.' Reply Br. 16 (citing Def.'s Opening Br. Ex.14, at 11).

15

Lexington's Delaware claims would be decided, because they are all based on the premise that Walters did not have the authority he exercised.

If the Irish court decides that the PAA is not a valid exercise of Walters's authority under the Security Agreement and the Settlement Agreement, Lexington might reasonably have claims based on the Patent's illegitimate transfer that could be litigated in Delaware.

For this reason, a stay is appropriate. Because I grant a stay of the action, I do not reach the *forum non conveniens* argument or the 12(b)(6) argument.

## IV.   CONCLUSION

To summarize, I hereby STAY these proceedings pending resolution of the Irish action. I do not address the remaining arguments for dismissal.

Sincerely,

*/s/Tamika Montgomery-Reeves*

Vice Chancellor

TMR/jp

16